**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| **HAND & NAIL HARMONY, INC.,** a **California corporation** and **NAIL ALLIANCE, LLC,** a **Delaware corporation** <br><br> Plaintiff, <br><br> **v.** <br><br> **THONG DINH LE,** an individual; **CHICAGOPETSTORE,** an entity of unknown origin; **NGO THANH TRUC,** an individual; **KHOA MAI,** an individual; **MS. ZHANG,** an individual; **VIUYU ELECTRONIC TECHNOLOGY CO. LTD,** and **DOES 5-10,** inclusive, <br><br> Defendants. | **Case No. 17-2508-EC** |

**FIRST AMENDED COMPLAINT**

Plaintiffs Hand & Nail Harmony, Inc. ("Harmony") and Nail Alliance, LLC ("Nail Alliance") (collectively, "Plaintiffs"), for their complaint against defendants Thong Dinh Le (a/k/a William Tony and/or "Mr. Sorors"), "chicagopetstore," Ngo Thanh Truc (formally sued as "Doe 1"), Khoa Mai (formally sued as "Doe 2" and possible a/k/a "Mr. Sorors"), Ms. Zhang (formally sued as "Doe 3"), Viuyu Electronic Technology Co. LTD (formally sued as "Doe 4"), and "Does" 5 through 10 (collectively, "Defendants"), allege as follows:

**JURISDICTION AND VENUE**

1.     The causes of action in this Complaint arise under the Lanham Trademark Act, Title 15 U.S.C. § 1051 *et seq*., and common law.

1

2.      This Court has federal question jurisdiction over the subject matter of this action pursuant to 28 U.S.C. §§ 1331 and 1338 (a) and (b), and supplemental jurisdiction over all other claims asserted herein under 28 U.S.C. § 1367(a).

3.      This Court has personal jurisdiction over Defendants pursuant to, *inter alia,* 735 ILCS 5/2-209 because Defendants reside in Illinois; have transacted substantial business from, to and/or within Illinois; have brought, sold or solicited the sales of counterfeit products from, to and/or within Illinois; have induced or enabled, or otherwise aided and abetted or conspired with others in the distribution of counterfeit products from, to and/or within Illinois; and/or have purposefully availed themselves of the benefits and protections of the Illinois by, *inter alia,* soliciting the sales and participated in the distribution of counterfeit products to, from and/or within Illinois, which sales and distribution Defendants knew would have, and has had, a substantial effects in Illinois, and/or Defendants otherwise have sufficient contacts to Illinois that give rise to the claims asserted herein, such that it would fair and reasonable and consistent with the United States Constitution to exercise personal jurisdiction over each of the Defendants.

4.      Alternatively, if any Defendant is not subject to personal jurisdiction in Illinois under applicable state law, Plaintiffs are informed and believe, and on that basis allege, that the Court has personal jurisdiction over any such Defendant pursuant to the Federal long-arm statute, Federal Rule of Civil Procedure 4(k)(2), because such a Defendant would not be subject to personal jurisdiction in any state's courts of general jurisdiction, and exercising jurisdiction would be consistent with the United States Constitution and laws.

5.      Venue is proper in this Court pursuant 28 U.S.C. § 1391(b).

## INTRODUCTION

6.     This case concerns the flagrant violation of Plaintiffs' intellectual property rights by Defendants' counterfeiting activities, which originate from China, involve a network of counterfeiters in the United States, and has manifested itself in cities and states across the nation, including Chicago, Illinois.  Defendants are actively engaged in manufacturing, distributing, selling, promoting and/or attempting to pass off counterfeit products and spurious imitations of Plaintiffs' GELISH® brand nail products.  Defendants' counterfeit products are cheap, low-quality masquerades, which use and disparage Plaintiffs' registered trademarks and inherently distinctive trade dress.  As a result, it is certain to deceive consumers and irreparably harm the goodwill and reputation earned by Plaintiffs and associated GELISH brand products.

## PLAINTIFFS

7.     Harmony is a corporation duly organized under the laws of the State of California, with its principal place of business in Brea, California.  Harmony manufactures, distributes and sells high-quality, soak-off gel polishes and other nail products, accessories and preparations under the brand name GELISH.  Harmony, through its qualified distributors, sells GELISH brand goods to boutiques and salons in this Judicial District and throughout the world.

8.     Nail Alliance is a limited liability corporation duly organized under the laws of Delaware, with its principal place of business in Gladstone, Missouri.  Nail Alliance owns and holds certain intellectual property rights used in connection with the GELISH goods, including federal registrations for GELISH brand trademarks.  Nail Alliance licenses used of these trademarks to Harmony.

9.     Harmony's success in selling GELISH brand products has increasingly attracted unscrupulous counterfeiters, such as Defendants.  These counterfeiters, anxious to capitalize on

the high demand for GELISH goods, dupe consumers with false labeling into purchasing an ever expanding number of spurious products with backstreet quality and false origin. Harmony spends a staggering amount of resources policing and enforcing its intellectual property rights to protect consumers and itself from the corrosive impact of counterfeit products.

## DEFENDANTS

1.      Defendant Thong Dinh Le ("Le") resides at, operates or helps operate a business at, or otherwise uses the following addresses to house inventory and/or conduct or assist in the operation of a business at:  5908 N. Talman Ave., Chicago IL 60659; 6026 N. Christiana Ave., Chicago, IL 60659; and/or Kelly Nails, 2304 Main St., Evanston, IL 60202.  With the assistance of the other Defendants, Le or his business operates off, *inter alia,* eBay as "chicagopetstore" and/or other user names, and uses said addresses for the business.  Plaintiffs are informed and believe, and on that basis allege, that "William Tony" and "Mr. Sorors" are aliases that Le and/or other Defendant(s) use when conducting business as "chicagopetstore" or are otherwise engaged in counterfeiting activity, including selling counterfeit GELISH brand nail products.

2.      Defendant chicagopetstore is an entity of unknown origin and/or username of Le and/or the other Defendant(s) and resides and/or is operating out of one or more of the following addresses:  5908 N. Talman Ave., Chicago IL 60659; 6026 N. Christiana Ave., Chicago, IL 60659; and/or Kelly Nails, 2304 Main St., Evanston, IL 60202.

3.      Defendant Ngo Thanh Truc ("Truc"), formally sued as Doe 1, resides at, helps operate a business at, or otherwise uses the following addresses to house inventory and/or assist in the operation of a business at:  5908 N. Talman Ave., Chicago IL 60659; 6026 N. Christiana Ave., Chicago, IL 60659; and/or Kelly Nails, 2304 Main St., Evanston, IL 60202.  Plaintiffs are informed and believe, and on that basis allege, that Truc (a) is the sister of former defendant

Hong Ngoc T. Ngo, the owner of 5908 N. Talman Ave., Chicago IL 60659, who has been dismissed without prejudice, (b) is the girlfriend of Le and, like Le, works at Kelly Nails, 2304 Main St., Evanston, IL 60202, and, with Le, has attempted to acquire and/or is in the process of acquiring Kelly Nails, and (c) has conspired with Le and/or aided and abetted Defendants' counterfeit operations by, *inter alia,* knowingly permitting the storage of counterfeit product at her residence, 5908 N. Talman Ave., Chicago IL 60659, using her residence as a mailing address for Defendants' wrongful activities, including counterfeiting operations, and/or using Kelly Nails to dispense of counterfeit GELISH brand product to unwitting customers.

4. Defendant Khoa Mai ("Mai"), formally sued as Doe 2, resides at, helps operate a business at, or otherwise uses the following addresses to house inventory and/or assist in the operation of a business at: 5908 N. Talman Ave., Chicago IL 60659; 6026 N. Christiana Ave., Chicago, IL 60659; and/or Kelly Nails, 2304 Main St., Evanston, IL 60202. Plaintiffs are informed and believe, and on that basis allege, that Mai is a business partner or prospective business partner of Le and/or Truc and has conspired with them and/or aided and abetted Defendants' counterfeit operations by, *inter alia,* assisting in the acquisition or attempted acquisition of Kelly Nails, which Le and Truc have used to dispense counterfeit GELISH brand product to unwitting customers.

5. Plaintiffs are informed and believe, and on that basis allege, that Ms. Zhang ("Zhang"), formally sued as Doe 3, (a) resides and/or has a manufacturing and/or distribution business in Yaoyu Group Zone Dongming Town, Huiyang District Huizhou, China, (b) is an owner and/or managing agent of Viuyu Electronic Technology Co. LT, (c) solicits and sells counterfeit GELISH brand products over the Internet to consumers in the United States, including but not limited to Le and/or chicagopetstore in Illinois, (d) ships and/or causes to be

5

shipped counterfeit GELISH brand products to consumers in the United States, including but not limited to Le and/or chicagopetstore in Illinois, and (e) includes in such shipments extra labels of counterfeit GELISH brand products in the event bottles get damaged for whatever reason.

6.      Plaintiffs are informed and believe, and on that basis allege, that Viuyu Electronic Technology Co. LT ("VET"), formally sued as Doe 4, (a) resides and/or has a manufacturing and/or distribution business in Yaoyu Group Zone Dongming Town, Huiyang District Huizhou, China, (b) solicits and sells counterfeit GELISH brand products over the Internet to consumers in the United States, including but not limited to Le and/or chicagopetstore in Illinois, (c) ships counterfeit GELISH brand products to consumers in the United States, including but not limited to Le and/or chicagopetstore in Illinois, and (d) includes in such shipments extra labels of counterfeit GELISH brand products in the event bottles get damaged for whatever reason.

7.      Defendants Does 5-10 are business entities or individuals which, upon information and belief, reside in Illinois, conduct business in Illinois or with persons or entities connected to Illinois, or conduct business designed to have and/or is having a substantial effects in Illinois.   Upon information and belief, Does 5-10 directly engage in the manufacture, promotion, distribution and/or sales of counterfeit or other spurious products as alleged herein as suppliers and/or officers, directors, owners, partners, members, and/or agents of the Defendants, and/or are otherwise acting in concert or participation with them, including but not limited to undertaking acts to aid and abet or in a conspiracy with the other Defendants.   Plaintiffs are presently unaware of the true names of Does 5-10.   Plaintiffs will amend this Complaint upon discovery of the identities of such fictitious Defendants.

## GENERAL ALLEGATIONS

### A.    GELISH® BRAND GEL POLISH

8.    GELISH brand products, including gel polishes and other nail care preparations, are known throughout the nail industry for their high quality, range of colors, durability, ease-of-use, consistency and beauty.

9.    Plaintiffs' principal, Danny Haile, invented the first brush-on, soak-off gel polish, which Harmony began selling in earnest in 2010 under the federally registered trademark "GELISH."  GELISH brand products have the benefits of both a traditional nail polish (vibrant colors and a brush on application and finish) and a hard gel (long lasting wear).  GELISH is a leading brand of gel polish in the United States and around the world.

10.    GELISH brand products revolutionized the nail industry.  Prior to Mr. Haile's invention, consumers generally frequented salons on select occasions for pampering or professional treatment.  They normally did not go to salons for the application of a nail polish, for example, which they could apply at home.  Because nail polish only lasted a few days before chipping or cracking, it is prohibitively expensive for most consumers to frequent a salon just for nail polish.  Moreover, although salons offered alternative and longer lasting products such as acrylics and hard-gels, consumers generally preferred the natural look and convenience of a traditional nail polish.  These practical realities were an impediment to salon business.

11.    GELISH brand products provided salons and professional nail technicians alike new opportunities to grow their businesses and expand their services.  With the introduction of GELISH brand gel polish, consumers could now frequent salons and obtain a natural, nail-polish look *in a convenient finish that would last three to four weeks*.  They could obtain the vibrant color on a natural looking nail with a long wear and finish that was easier to remove than an

acrylic or hard gel. As a result, GELISH brand products substantially increased salon business and have experienced tremendous commercial success in the United States and around the world. Plaintiffs have sold millions of bottles of their GELISH band gel polish, foundation and top coat, which quickly became a brand of nail products. Consumers recognize GELISH brand products by their trademarks and the distinctive trade dress of the GELISH brand bottle.

12.    The GELISH mark is protected by multiple federal trademark registrations, including United States Trademark Registration Nos. 4,096,115 (standard character mark) and 3,857,946 (design plus words) for use in nail care preparations. Copies of the GELISH marks certificates of registration are set forth at Exhibits "1" and "2" to this Complaint.

13.    The GELISH design, which includes a unique three-dimensional configuration and scrollwork pattern, is also protected by federal United States Trademark Registration Nos. 4,473,557 and 4,473,558. Copies of these design marks certificates of registration are set forth at Exhibits "3" and "4" to this Complaint.

14.    Plaintiffs further distinguish their products with artistic and visually beautiful bottle designs and ornamentation ("GELISH brand bottle"). The GELISH brand bottle has clean lines and distinctive scroll artwork on a white background, and features the dominant GELISH marks as illustrated below in FIGURE 1. These unique and inherently distinctive features of the GELISH brand bottle are protected as a trade dress under both state and federal law.

 

**FIGURE 1: GENUINE GELISH FOUNDATION & TOP COAT**

15.     The distinctive appearance of these GELISH brand bottles, taken as a whole, is unique and non-functional.  Since its inception and through this year, Harmony has extensively and continuously promoted and used this design for GELISH brand bottles in the United States and worldwide.  Through this extensive and continuous use and promotion, the distinctive features of these GELISH brand bottles now serve as well-known indicators of the origin and quality of GELISH brand goods and have acquired secondary meaning.  Collectively, the preceding federally registered and common law GELISH trademarks, design marks, and trade dress are referred to herein as the "GELISH marks."

16.     Nail Alliance owns the GELISH marks.

17.     Pursuant to a license agreement with Nail Alliance, Harmony has an exclusive worldwide right to use the GELISH marks and GELISH brand bottles.

18.     Harmony has at all times relevant to this Complaint been an exclusive licensee with the asserted rights in and to the GELISH marks and GELISH brand bottles.

19.     The GELISH marks and GELISH brand bottles are symbols of the quality of Harmony and Nail Alliance, and of their reputation and goodwill, and they have never been abandoned.  It is the leading brand of Nail Alliance products manufactured by Harmony.

20.     Over a period of years, Plaintiffs have invested and continue to invest substantial time, money and other resources to widely promote and protect GELISH brand goods and the GELISH brand bottles in the United States and throughout the world.

21.     As a result of Plaintiffs' efforts, members of the consuming public readily identify and associate the GELISH marks and GELISH brand bottles with high quality sponsored and approved by Plaintiffs.   The GELISH marks and GELISH brand bottles achieved secondary meaning as identifiers of high quality nail products.

22.     GELISH brand goods are widely and legitimately promoted by Plaintiffs on the Internet and in numerous industry publications and trade shows, as well as by authorized GELISH brand goods distributors.  Upon information and belief, the GELISH marks qualify as "famous" as that term is used in 15 U.S.C. § 1125 (c)(1).

23.     Plaintiffs monitor and police the use of the GELISH marks and bottle.

24.     Harmony has given notice, including to Defendants, pursuant to 15 U.S.C. § 1111 by marking GELISH goods with the ® symbol to notify others that the GELISH mark is the subject of federal trademark registrations.

25.     The GELISH marks and bottle have never been assigned or licensed to any of the Defendants in this matter.

   **B.     DEFENDANTS' COUNTERFEITING ACTIVITIES**

26.     Defendants are manufacturing, purchasing, promoting, distributing, advertising, offering to sell, selling and/or palming off counterfeit GELISH brand products to, from, within and/or throughout the United States, including Chicago, Illinois.

27.    Defendants have knowledge of Plaintiffs' exclusive rights in and to the GELISH marks and bottle, including their exclusive right to use the GELISH marks and trade dress and the goodwill associated therewith in the United States and around the world.

28.    The infringing products sold by counterfeiters such as Defendants are nearly identical in appearance in material respects to genuine GELISH brand goods.  Defendants use the GELISH marks in the same stylized fashion, but for cheaper and lower quality goods, without Plaintiffs' quality control and customer service, in bottles with false and misleading labeling.  Defendants also use a nearly identical trade dress on counterfeit GELISH brand bottles, which include the same or substantially similar artwork, bottle and bottle designs, fonts, names and script, as well as fraudulent item codes, item numbers, and/or UPC codes.

29.    FIGURES 2-3, below, illustrate genuine and counterfeit GELISH brand products side-by-side.   Figure 2 illustrates a front view of a genuine GELISH brand foundation (FOUNDATION) (left) and a counterfeit product (right).  Figure 3 illustrates a front view of a genuine GELISH brand top coat (TOP IT OFF) (left) and a counterfeit product (right).



**FIGURE 2: FRONT VIEW OF GENUINE GELISH PRODUCT (FOUNDATION) NEXT TO EXAMPLE COUNTERFEIT PRODUCT**



**FIGURE 3: FRONT VIEW OF GENUINE GELISH PRODUCT (TOP IT OFF) NEXT TO EXAMPLE COUNTERFEIT PRODUCT**

30.     Defendants are manufacturing, promoting, distributing, advertising, selling and/or passing off counterfeit GELISH brand product.  The above side-by-side comparisons illustrate counterfeit products containing identical and/or substantially similar designs and markings, including bottle design, labeling, stylized font, similar grey scrollwork highlights, floral backgrounds, color, tone, writings, and the like, with the obvious objective of being indistinguishable in appearance from genuine GELISH brand products.  Plaintiffs purchased counterfeit product from "chicagopetstore" off eBay from Defendants.  Defendants are manufacturing, promoting, distributing and/or selling product in bottles with false labeling of the contents and origin of the products, as well as fabricated identification codes.

31.     Defendant Le has admitted and produced documents supporting that he had previously purchased from Zhang and VET through various website listings, on at least four (4) or five (5) separate occasions, counterfeit GELISH brand product, each Internet transaction consisting of three to four hundred (300 to 400) "boxes" or "units" of counterfeit product.  In

addition, Le admitted that he had purchased additional counterfeit product from Zhang and VET over the Internet and expected at least two such further shipments via Federal Express.

32.     When the premises located at the return address of the counterfeit product purchased by Plaintiffs was raided by U.S. Marshalls and Plaintiffs' private investigators, Le admitted that he was "William Tony," the name on the return address, and was associated with chicagopetstore, and Truc, without any instruction from Le, went to the basement of the premises, located and turned over counterfeit product.  Le took the U.S. Marshalls and Plaintiffs' private investigators to his home address and to Kelly Nails, where additional counterfeit product was located, turned over and seized.  In addition, physical evidence of the counterfeit operation was seized, including dozens of counterfeit GELISH labeled foundation, a shipping container from Ms. Zhang and VET to Trunc containing additional broken bottles and packaging of counterfeit GELISH labeled product, polish and top coat, as well as replacement counterfeit label sheets, a FedEx attempted-delivery notice, and a document confirming a partnership involving Le, Truc and Mai to purchase Kelly Nails, where Plaintiffs' investigators were informed that one or more of them worked as nail technicians.

33.     Upon information and belief, Defendants are using the GELISH marks and GELISH brand bottles to promote and sell cheap, inferior goods to mimic Plaintiffs' goods.  The health effects of such products are not precisely known to Plaintiffs, but Plaintiffs have received complaint of "burning" as a result of use of counterfeit product, and they may well present a danger to the health and safety of consumers.  Indeed, China is a well-known source of unsafe and hazardous products as they do not follow U.S. and European safety standards.

34.     With full knowledge of the counterfeit and suspect nature of the products, Defendants are manufacturing, using, promoting, selling and/or otherwise advertising,

distributing, and/or offering for sale substantial quantities of such counterfeit product—fully knowing that these products, with their inferior quality, will be mistaken for the genuine high quality genuine GELISH brand products offered for sale by Plaintiffs.

35.　　Defendants' actions are designed to cause, and are causing, actual confusion among consumers, including both end users and professional nail technicians, who are led to believe, and believe, and if Defendants are not enjoined, will continue to believe, that they have purchased or have received, or are receiving, genuine GELISH brand products that originate from and are approved and supported by Plaintiffs.

36.　　Plaintiffs are suffering irreparable harm due, not only to consumer confusion, but also to, *inter alia,* the cheap/poor quality of the counterfeit product, the lack of quality control and custom support thereof, the loss of control over Plaintiffs' famous GELISH marks and the reputation of GELISH products, and the ongoing disparagement and diminution of the goodwill associated with the GELISH brand.

37.　　Defendants' wrongful conduct has caused Plaintiffs damages, the full amount of which will be difficult to calculate, but is no less than $2 million.

38.　　Since the acts of Defendants will continue in the future unless enjoined and restrained, Plaintiffs have no adequate remedy at law.

39.　　Plaintiffs have satisfied any and all conditions to the filing of this action and/or any such conditions have been waived.

**COUNT ONE**
**(Against All Defendants)**
**TRADEMARK INFRINGEMENT AND COUNTERFEITING IN**
**VIOLATION OF 15 U.S.C. §§ 1114, 1116(d)**

40.　　Plaintiffs repeat and re-allege the allegations in paragraphs 1 to 39 above as if fully set forth herein.

41.     Defendants knowingly and without the consent of Plaintiffs have used in commerce reproductions, counterfeit copies, identical products and packaging, and nearly identical imitations of multiple registered marks of Plaintiffs, in connection with the sale, offering for sale, distribution, and/or advertising of goods, which is likely to cause confusion, cause mistake, or to deceive.

42.     Notwithstanding Plaintiffs' well-known and prior rights in the GELISH marks and the GELISH goods, Defendants manufacture, distribute, promote, offer for sale and/or sell counterfeit and/or otherwise spurious knock-off products, in or affecting interstate commerce, in direct competition with the sale of genuine GELISH products.

43.     Without prejudice to the generality of the foregoing, Defendants' violations consist of or include the use of counterfeit marks in connection with the sale, offering for sale, and/or distribution of counterfeit product.

44.     Defendants' activities constitute counterfeiting and intentional, willful infringement in violation of Plaintiffs' rights under 15 U.S.C. § 1114, and have caused and will continue to cause Plaintiffs irreparable harm.

45.     Plaintiffs have no adequate remedy at law as monetary damages are inadequate to compensate Plaintiffs for the injuries caused by Defendants.

46.     Unless immediately restrained and enjoined by this Court under 15 U.S.C. § 1116(a) and (d) and the equitable powers of this Court, Defendants will persist in their activities and continue to cause Plaintiffs irreparable harm.

47.     Plaintiffs are entitled to injunctive relief, including the seizure of counterfeit goods at Defendants' premises.

48. Plaintiffs have suffered damaged, including lost profits, according to proof at trial, but in an amount of no less than $2 million dollars, including by no less than $100,000 in damages per each incident and each individual involved in Defendants' unlawful activities.

49. In addition, and/or in the alternative, Plaintiffs are entitled to disgorge and recover Defendants' profits from their sales of counterfeit product.

50. Because of Defendants' counterfeiting and willful, malicious and/or fraudulent misconduct, and/or because of the exceptional nature of this case, Plaintiffs are entitled to enhanced (or treble) damages as well as an award of costs and reasonable attorneys' fees.

51. At Plaintiffs' election, in lieu of compensatory damages according to proof, Plaintiffs should be awarded statutory damages from each Defendant in an amount no more than two million dollars ($2,000,000.00) per each counterfeit GELISH mark used and product sold, as provided by 15 U.S.C. §1117(c)(2) of the Lanham Act.

**COUNT TWO**
**(Against All Defendants)**
**FALSE DESIGNATION OF ORIGIN, FALSE DESCRIPTIONS, UNFAIR**
**COMPETITION AND DILUTION UNDER 15 U.S.C. § 1125**

52. Plaintiffs repeat and re-allege the allegations in paragraphs 1 to 39 above as if fully set forth herein.

53. Defendants knowingly and without the consent of Plaintiffs have used in commerce reproductions, counterfeit copies, identical products and packaging, and nearly identical imitations of multiple registered marks of Plaintiffs, in connection with the sale, offering for sale, distribution, and/or advertising of goods, which is likely to cause confusion, cause mistake, or to deceive.

54. Notwithstanding Plaintiffs' well-known and prior rights in the GELISH marks and the GELISH goods, Defendants manufacture, distribute, promote, offer for sale and/or sell

16

counterfeit product in direct competition with the sale of genuine GELISH products in or affecting interstate commerce.

55.     Without prejudice to the generality of the foregoing, Defendants' violations consist of or include the use of counterfeit marks in connection with the sale, offering for sale, and/or distribution of counterfeit product.

56.     The counterfeit product trafficked by Defendants are designed to look like the same nature and type of product as GELISH brand goods.  The counterfeit bottles so closely resemble GELISH brand goods that Defendants' activities are likely to, and are certainly intended to, cause confusion of among consumers (both end-users and nail technicians), and have caused actual confusion in the marketplace.

57.     By misappropriating and using the GELISH marks, Defendants misrepresent and falsely describe the content, origin and source of the counterfeit product in addition to creating a likelihood of and causing actual confusion.

58.     Moreover, the counterfeit product is generally of inferior quality, lacks the same quality control and customer support as authentic GELISH products, and the sale thereof will necessarily damage and dilute the goodwill of Plaintiffs and the GELISH brand, as well as the reputation Harmony and Nail Alliance have developed in connection with the sale of genuine GELISH brand products.

59.     Defendants' unlawful, unauthorized and unlicensed manufacture, promotion, distribution, offer for sale, and sale of counterfeit product creates the express and implied misrepresentation that the counterfeit product was created, authorized, approved and/or supported by Plaintiffs.

60.     Defendants' activities violate 15 U.S.C. § 1125(a) in that their use in commerce of the GELISH marks, trade dress and/or bottle, create a false designation of origin. Defendants' use, manufacture, promotion, distribution, offers to sell, selling, and importing into the United States counterfeit product that is confusingly similar to the GELISH marks, the bottle and trade dress infringes Plaintiffs' rights in violation of the Lanham Act and common law.

61.     Defendants' acts alleged above have caused, and if not enjoined will continue to cause, irreparable and continuing harm to Plaintiffs' trademark and trade dress rights, business, reputation and goodwill.

62.     Plaintiffs have no adequate remedy at law.

63.     Plaintiffs are entitled to injunctive relief, including the seizure of counterfeit goods.

64.     Plaintiffs have been damaged according to proof at trial but in an amount of no less than two million dollars.

65.     Defendants' use of colorable imitations of the GELISH brand bottle has been intentional and willful. Defendants' bad faith is evidenced at least by the striking similarity of the counterfeit product to the GELISH brand bottle. Additionally, the use of identical scroll artwork, an identical color scheme, identical names and fonts, and identical packaging, including fabricated item codes, also demonstrate the intentional and willful nature of Defendants' actions.

66.     Because of Defendants' counterfeiting, willful, malicious and/or fraudulent misconduct, and/or because of the exceptional nature of this case, Plaintiffs are entitled to enhanced (or treble) damages as well as an award of costs and reasonable attorneys' fees.

67.     In lieu of compensatory damages according to proof, Plaintiffs should be permitted to seek and/or awarded statutory damages from each Defendant in an amount no more

than two million dollars ($2,000,000.00) per each counterfeit GELISH mark used and product sold, as provided by 15 U.S.C. §1117(c)(2) of the Lanham Act.

**COUNT THREE**
**(Against all Defendants)**
**VIOLATION OF ILLINOIS UNIFORM DECEPTIVE TRADE PRACTICES**
**(815 ILCS §§ 510/1 ET SEQ.)**

68.     Plaintiffs repeat and re-allege the allegations in paragraphs 1 to 39 above as if fully set forth herein.

69.     Defendants have engaged in acts violating Illinois law including, but not limited to, passing off counterfeit products as those of Plaintiffs, causing a likelihood of confusion and/or misunderstanding as to the source of their goods, causing a likelihood of confusion and/or misunderstanding as to an affiliation, connection, or association with genuine Plaintiffs' Products, representing that their products have Plaintiffs' approval when they do not, and engaging in other conduct which creates a likelihood of confusion or misunderstanding among the public.

70.     Defendants' wrongful conduct acts constitute a willful violation of the Illinois Uniform Deceptive Trade Practices Act, 815 ILCS §§ 510/1 *et seq*.

71.     Defendants' wrongful conduct has caused and is likely to cause Plaintiffs to suffer damage to their reputations, associated goodwill, and a loss of money or property.

72.     Defendants' wrongful conduct has caused, and is causing, Plaintiffs' to suffer irreparable harm, and unless Defendants are enjoined by the Court, Plaintiffs will suffer future irreparable harm as a direct result of Defendants' unlawful activities.

73.     Plaintiffs have no adequate remedy at law.

74.     Plaintiffs' pray for all relief the Court determines is appropriate, including but not limited to injunctive relief.

19

## PRAYER FOR RELIEF

1.  WHEREFORE, Plaintiffs demand judgment on all Counts of this Complaint and entry of an award of monetary and equitable relief against Defendants as follows:

A.  That Defendants, their agents, servants, employees, officers, attorneys, successors and assigns, and all persons acting in concert or participation with them, be temporarily, preliminarily and permanently enjoined in this and all other Judicial Districts of the United States from: (i) manufacturing, distributing, selling, offering for sale, holding for sale or advertising any products, merchandise or goods bearing the trademarks, logos and other indicia of the GELISH mark or any colorable variation or imitation thereof without first obtaining relief from the Court or Plaintiffs' express written consent; and (ii) representing that any products, merchandise or goods manufactured, distributed, sold, held for sale or advertised by them is sponsored or authorized by Harmony and/or Nail without first obtaining relief from the Court or Plaintiffs' express written consent.

B.  That the United States Marshal, the United States Constable, and/or the local or state police or sheriff, or off duty officers of the same, along with authorized agents of Plaintiffs and/or any persons acting under their supervision, to seize and impound at the specified addresses of the Defendants herein or other verified locations when the order issues: (a) any and all counterfeit products that Defendants possess or attempt to advertise, promote, sell, distribute or hold for sale, whether or not in the process of manufacture or delivery, (b) any and all labels, packages, wrappings, receptacles and advertising collateral, the use of which in commerce would constitute trademark infringement and violate the injunction, and (c) any and all evidence of the counterfeiting activity, including but not limited to financial records, business records, shipping

records, purchase orders, invoices, computers, storage devices, surveillance recordings, and any other evidence of wrongdoing whether held in electronic or physical format.

        C.     That Defendants, pursuant to 15 U.S.C. § 1118, and within seven days of the date of entry of an injunction and notice of the order, deliver up for testing, preservation or destruction (a) any and all counterfeit products that Defendants possess or attempt to advertise, promote, sell, distribute or hold for sale, whether or not in the process of manufacture or delivery, (b) any and all labels, packages, wrappings, receptacles and advertising collateral, the use of which in commerce would constitute trademark infringement and violate the injunction, and (c) any and all evidence of the counterfeiting activity, including but not limited to financial records, business records, shipping records, purchase orders, invoices, computers, storage devices, surveillance recordings, and any other evidence of wrongdoing whether held in electronic or physical format.

        D.     That Defendants be required to account for all nail products acquired and sold in the last two years or any other relevant time period, and pay Plaintiffs for all profits and damages resulting from Defendants' infringing and counterfeiting activities, and that the award to Plaintiffs be trebled, as provided for under 15 U.S.C. §1117, or, at Plaintiffs' election, that Plaintiffs be awarded statutory damages from each Defendant in an amount no more than two million dollars ($2,000,000.00) per each counterfeit GELISH mark used and product sold, as provided by 15 U.S.C. §1117(c)(2) of the Lanham Act.

        E.     That Defendants be made jointly and severally liable to Plaintiffs, and pay to Plaintiffs damages in an amount to be determined, but no less than $2 million in aggregate and no less than $100,000 per incident and per individual in compensatory damages.

        F.     That Defendants pay to Plaintiffs punitive damages.

G. That Defendants pay to Plaintiffs pre-judgment interest.

H. That Defendants pay to Plaintiffs their costs, reasonable attorney's fees, and investigative fees.

I. Such other and further relief as this Court deems just and proper.

## DEMAND FOR JURY TRIAL

Pursuant to Federal Rule of Civil Procedure 38(b), Plaintiffs demands a jury trial on all issues triable by a jury.

Dated: May 4, 2017                    Respectfully submitted,


                                       /s/Todd M. Malynn
                                      Thomas L. Gemmell (IL 6229305)
                                      Adam S. Weiss (IL 6256842)
                                      Mark T. Deming (IL 6299631)
                                      POLSINELLI PC
                                      150 N. Riverside
                                      Suite 3000
                                      Chicago, Illinois 60606
                                      T: (312) 819-1900
                                      F: (312) 819-1910
                                      *tgemmell@polsinelli.com*
                                      *aweiss@polsinelli.com*
                                      *mdeming@polsinelli.com*

                                      Todd M. Malynn (*pro hac vice* to be filed)
                                      POLSINELLI LLP
                                      2049 Century Park East
                                      Suite 2900
                                      Los Angeles, California 90067
                                      T: (310) 556-1801
                                      F: (310) 556-1802

                                      Attorneys for Plaintiffs Hand & Nail Harmony,
                                      Inc. and Nail Alliance, LLC